[Civ. No. 16044. Second Dist., Div. Three. May 24, 1948.]

MILO BARRY, Appellant, v. CONTRACTORS STATE LICENSE BOARD, Respondent.

Milo Barry, in pro. per., for Appellant.

Fred N. Howser, Attorney General, and Bayard Rhone, Deputy Attorney General, for Respondent.

SHINN, Acting P. J.—Petitioner brought this action against the Contractors State License Board of the Department of Professional and Vocational Standards, in mandate, to review an order of said board revoking his license as a contractor. The trial court found, in accordance with the findings of the contractors board, and in response to the charges filed against petitioner, that while his license was under suspension he entered into a contract with one Albert Smith to furnish the labor and material to enclose a porch for use as a bedroom and to do certain other remodeling of a residence for the sum of $1,200, in violation of section 7028 of the Business and Professions Code (hereinafter referred to as the code); that in violation of section 7110 of the code he wilfully violated section 91.4809 of the Los Angeles Building Code and sections 16000 and 16001 of the State Housing Act (Health & Saf. Code, §§ 15000-17902), in that he failed to have a clearance of 18 inches below the floor joists of subfloor in plank-type floor construction, and also failed to provide a sufficient number of openings with screens or lattice work to insure proper ventilation; that in violation of section 7110 of the code, he wilfully violated section 91.4804 of the Los Angeles Building Code, and also section 16057 of the State Housing Act, in that he failed to construct said bedroom with the proper ceiling height, as required by said building codes, but constructed the same with a height of only about $6\frac{1}{2}$ feet; that he violated section 7114 of the code in that he did aid and abet two unlicensed contractors, Hadley and Tomlinson, to evade the provisions of said code; that he violated section 7116 of the code in that when a dispute arose over payment for the job he did wilfully notify the Department of Building and Safety of the city of Los Angeles that the work had been done in violation of the Los Angeles Building Code; and that he violated the provisions of section 7118 of the code in that he knowingly entered into contracts with one Hadley and one Tomlinson, knowing that they were unlicensed as required by the contractors license law. It was found that petitioner had been fairly tried, that there was adequate competent evidence to sustain the findings, decision and order revoking petitioner's license, and that the order

was not arbitrary, capricious, illegal, fraudulent, or an abuse of discretion. In the conclusions of law the court found that petitioner was guilty of the said violations charged, and that the order of the board should be sustained; and the judgment denied a peremptory writ. Upon the court trial transcripts of the proceedings before the board were received in evidence. The clerk's transcript of those proceedings contains the complaint and amendments thereto filed against petitioner, the answer, the findings, conclusions and recommendations of the hearing officer, the decision of the registrar, the applications for and order denying rehearing, and intermediate motions and orders. The reporter's transcript consists of 343 pages of the oral proceedings before the deputy registrar. Numerous letters and other writings, including portions of the Building Code of the city of Los Angeles, were received as exhibits, together with certain photographs of the building on which the work was done. No additional evidence was received at the trial. The trial court was called upon to determine, (1) whether the evidence adduced at the hearing before the board was sufficient to sustain all or any of the charges, (2) whether all or any of the acts proved were in violation of the code in respects which justified disciplinary action, and (3) whether upon the facts established by the evidence the revocation of the petitioner's license was arbitrary and an abuse of discretion. Since, as we say, no additional evidence was produced at the trial, the factual issues were to be determined from an inspection of the reporter's transcript and the exhibits.

Petitioner is and has been representing himself, throughout the proceedings. He has slight understanding of the questions which his appeal presents for decision. He has filed an opening brief and reply brief which, for the most part, are devoted to attacks upon the motives of the inspector who filed the complaint and of certain other persons, and he complains of irregularities in the proceedings before the deputy registrar. His briefs contain no discussion of the evidence given against him, or that which was given in his favor, and we are unable to find in his briefs any contention that the evidence does not support the findings. However, in the oral argument he did question the sufficiency of the evidence to prove that he had engaged in any contracting while his license was under suspension, and he also contended that the work he had done in adding an additional room to a residence and in making

other alterations was not in violation of the city building code or State Housing Act. Similarly, the brief of respondent board points to no evidence touching any of the alleged violations, although it is stated generally and without transcript reference, that in the hearing before the board petitioner admitted the commission of the acts which were charged to be in violation of law. We can understand the failure of petitioner to discuss the evidence as to the alleged violations. There was no evidence favorable to him. We have made an independent study of the record with respect to the sufficiency of the evidence and find it adequate in all respects to support the findings.

On October 30, 1943, in a proceeding instituted by Barry in the superior court, for review of an order of respondent board suspending his contractor's license, the court made an order purporting to reinstate petitioner's license ''pending the review and trial de novo of said proceedings.'' On November 2, 1943, said order was vacated. It was petitioner's contention in the instant proceeding, and he testified, that his written agreement with Smith was signed by Mr. and Mrs. Smith and himself at his home in the forenoon of November 1, 1943, and it is upon this ground that he contends he was duly licensed at that time by virtue of the order purporting to reinstate his license. The time card of Mrs. Smith's employer, which was in evidence, showed that she was not absent from her work on November 1st. Both Mr. and Mrs. Smith testified that the agreement was signed on a date subsequent to revocation of the order of reinstatement, and the court found that it was entered into on November 9, 1943. Entering into this contract was a violation of the code and a cause for revocation of petitioner's license. (§§ 7028, 7115.)

Petitioner's work included closing in an existing porch in a dwelling, which, when completed, had a ceiling height as low in places as 6½ feet and an average height of about 6 feet 9 inches, whereas the city building code and State Housing Act required a height of 8 feet. The floor of the room had no ground clearance beneath it and no ventilation, whereas the said codes required a clearance of 18 inches and also sufficient openings to insure proper ventilation. These violations of the building codes were ground for revocation of the license under section 7110, Business and Professions Code.

Petitioner entered into a written contract with Tomlinson to do brick work at a fixed price of $60, and a contract

with Hadley for carpenter work for a fixed price of $85. Although these contractors were unlicensed, petitioner claims legality for the contracts because each was for less than $100, citing sections 7048 of the code. However, since the work of construction in each case was ''only a part of a larger or major operation'' the provision excepting contracts of less than $100 was inapplicable. (§ 7048, par. 2.) Tomlinson offered to do the work at daily wages and it was only upon petitioner's insistence that he took a contract for the work. Since Hadley was unlicensed it is to be presumed that he also was working for wages. Petitioner admittedly insisted upon having contracts because his compensation insurance had been cancelled and he had no insurance coverage for any employees. We think these facts were sufficient in this proceeding to charge petitioner with knowledge that Tomlinson and Hadley were unlicensed. Certainly, according to his own testimony, he did not act in the belief that they were licensed, since he claimed the right to contract with unlicensed contractors so long as neither contract exceeded $100. He was therefore guilty of a violation of knowingly contracting with unlicensed contractors, which is a ground for disciplinary action (§ 7118). It is immaterial whether he was also by the same act aiding and abetting others to evade the act. in violation of section 7114, since merely entering into the contracts with unlicensed contractors, under the circumstances related, would not have constituted two separate offenses.

 While petitioner was engaged in a dispute with Smith over payment for his work he wrote a letter to the Department of Building and Safety of Los Angeles, stating that the ceiling of the room he had added to the Smiths' house was less that 8 feet high, and that the room was being used as a bedroom, although he had constructed it for use as a den or library. The latter statement was false. His written agreement with Smith stated that the porch was to be enclosed for use as a bedroom. He had previously made threats to Smith that he would disclose to the building department the violations of the building code. His purpose in writing the letter was to involve Smith in trouble with the authorities and he undoubtedly was actuated by malice. Both respondent board and the trial court found that the writing of the letter was a violation of section 7116, which reads as follows: ''The doing of any wilful or fraudulent act by the licensee as a contractor in consequence of which another is substantially injured, con-

stitutes a cause for disciplinary action.'' We do not believe that within the meaning of this section the notification to the building department was a wilful or fraudulent act which would justify disciplinary action. The letter was not written in the capacity of a contractor. Petitioner had long since discarded the role of contractor for that of litigant, in which latter role he proved to be as obnoxious as he had been in the former. He was given to the writing of scurrilous letters and the making of vicious accusations in connection with his various lawsuits, but this conduct was not within the regulatory scope of the act. Any annoyance that Smith may have suffered as a consequence of petitioner's tale-telling would not in our opinion have amounted to the substantial injury contemplated by the code section. Furthermore, the addition to the house was not condemned, and it appears that the only penalty imposed upon Smith was a notification by the building department that the room could not be thereafter used as a bedroom. Except in this one particular, the conclusions of the trial court are fully sustained by the record.

■ The order revoking petitioner's license provided as a condition to application for reinstatement of the license that petitioner should reconstruct the addition to meet the requirements of the building code, at no cost to the owner. Such conditions may be imposed upon revocation of a license (§ 7095). It would not be difficult for petitioner to meet these conditions and the terms of the order were not in excess of the discretionary powers of the board.

■ As a defense to all the charges of violations of the building code and the Housing Act, petitioner claims that it was lawful to enclose the porch so as to add an additional room without compliance with the requirements governing new construction. In this connection we are required to construe sections 15154 of the Housing Act, and section 91.0103 (d) of the Los Angeles Building Code, which read as follows: (15154) ''Except as otherwise permitted or required by this part: (a) Any alteration, installation, or change in, including use or occupancy, or reconstruction of, any building shall meet the requirements of this part relating to that building. (b) Any lawfully existing fixture, construction, or arrangement in a building may be replaced in kind.''

(§ 91.0103 (d).) ''Additions conforming to the construction of the original building may be made to nonconforming one-story buildings outside of any Fire District provided the

addition, in any two-year period, is not in excess of two hundred square feet (200 square feet) or 50 per cent of the area of the original building.''

Petitioner's contention appears to be that since the ceiling of the porch was less than 7 feet in height, and clearance under the porch was less than 18 inches, section 91.0103, subdivision (d) of the building code allowed the conversion of the porch into a bedroom with the same ceiling height and lack of clearance and ventilation. The words, ''additions conforming to the construction of the original building,'' in section 91.0103 (d), undoubtedly mean that the type of construction may be the same, but we do not understand them to mean that every nonconforming feature can be duplicated in new additions. Moreover, no contention is made that the original building had bedrooms with 6½ foot ceilings and no clearance or ventilation under the floors. If section 91.0103 (d) should be construed as allowing the conversion of a porch into a nonconforming bedroom, it would be in conflict with the State Housing Act, section 15154. Any lawfully existing fixture, construction or arrangement in a building may be replaced in kind; but a change such as the enclosure of a porch into a bedroom, being a change of use, must comply with the requirements of the act relating to that building. Since the building was a dwelling, as defined in the act, and we find no applicable exception to the provision quoted from the state law, it follows that the additional room was required to have the ceiling height and the floor clearance and ventilation specified for new bedrooms in a dwelling.

 Petitioner was fairly tried and found guilty of conduct justifying the order under review. We have fully considered his claims of irregularities of procedure before the hearing officer and find them unwarranted. Only one of them deserves particular mention and it is not doubtful. The hearing before the deputy registrar ended and the matter was ordered submitted on September 18th. On September 30th, an order was made which recited that good cause appeared therefor and that the submission was set aside and the matter resubmitted as of that date. The further decision of the registrar was made October 10th. Petitioner's contention is that it is required by section 7094 of the code that the decision of the registrar be rendered within 20 days after the hearing and submission of the proceeding, that there is no authority for setting aside an order of submission, and that

upon the expiration of the 20-day period jurisdiction to proceed further expired. A decision after the expiration of this period is not forbidden by the statute, expressly or by implication, and the requirement is to be interpreted as directory only. (*City of Los Angeles* v. *Hannon*, 79 Cal.App. 669, 673 [251 P. 247].) There was a continuing jurisdiction and duty to carry the matter to a conclusion.

Findings and judgment were signed and filed in the trial court September 25, 1946. On the following day petitioner caused to be filed an affidavit relating to proceedings during the trial, making general charges that the trial judge was disqualified by reason of bias and prejudice to render an impartial judgment. Petitioner gave notice of intention to move for a new trial. We may assume that the attempt to disqualify the judge to rule on the motion was proper and timely. (See *Krebs* v. *Los Angeles Railway Corp.*, 7 Cal.2d 549, 555 [61 P.2d 931].) It was so regarded and was acted on as a prima facie showing of disqualification. The matter of the alleged disqualification was submitted to another judge of the same court who, on October 24th, determined from petitioner's affidavit and the answering affidavit of the trial judge that the latter had no bias or prejudice toward petitioner and was not disqualified. On a later date the trial judge denied petitioner's motion for new trial and his motion to vacate and set aside the judgment.

Petitioner's notice of appeal is directed in part against the order that the trial judge was not disqualified. The points involved on this phase of the appeal are not covered in the briefs. There is no merit to the appeal from the order. If petitioner's affidavit stated any facts, aside from conclusions, as grounds for his motion, which is doubtful, they were fully met by the affidavit of the judge, and we are bound by the finding that the judge entertained no bias or prejudice and was not disqualified to rule on the motion for a new trial.

The fact that thereafter an appeal was taken from the order holding the judge not to be disqualified did not affect the validity of the order denying the motion for a new trial. (*Golish* v. *Feinstein*, 123 Cal.App. 547 [11 P.2d 893].)

The judgment and the orders specified in the notice of appeal are affirmed.

Wood, J., and Vallée, J. pro tem., concurred.