[Civ. No. 11383. Fourth Dist., Div. One. Oct. 11, 1973.]

VITEK, INC., Plaintiff and Respondent, v.
ALVARADO ICE PALACE, INC., et al., Defendants and Appellants.

## COUNSEL

Ball, Hunt, Hart, Brown & Baerwitz, John R. McDonough and Stephen B. Mitchell for Defendants and Appellants.

Joseph J. Fisch for Plaintiff and Respondent.

## OPINION

**COLOGNE, J.**—After a trial by the court, the plaintiff Vitek, Inc. (Vitek) was awarded judgment against Alvarado Ice Palace, Inc. (Alvarado) for $86,062.33 together with interest, costs and attorney fees based on its claims under a written construction contract. The court also recognized as valid the mechanic's lien filed by Vitek and authorized enforcement by sale of the improved real property owned by Leonard A. Bloom and Deanne H. Bloom. Liberty National Life Insurance Company was beneficiary of a deed of trust on the property but the encumbrance held by Liberty was inferior to the plaintiff's lien.

In accordance with the law requiring this court to view the facts in the light most favorable to sustain the judgment of the trial court, we will recount the pertinent events giving rise to the controversy.

In 1968 the defendant Alvarado was incorporated to build and operate an ice skating rink in the City of La Mesa. It leased certain real property from the Blooms. Leonard Bloom was president of Alvarado and its principal agent negotiating the contract in question. In June of that year an architect, Donald Goldman, was hired and in September negotiations were begun with Vitek, a California corporation, which would serve as the general contractor. Negotiations on the terms of the contract were involved and protracted and oral understandings were reached before a written contract was agreed upon and formally executed. Vitek had considerable experience building larger structures such as churches, schools, motels, and other commercial as well as residential buildings, but had allowed its license to expire. A written contract was formally executed late in the afternoon of Friday, October 25, 1968, and on Monday, October 28, 1968, Vitek's active license as a general contractor was renewed. It was on that day, October 28, 1968, Alvarado made its first payment under the contract and work was begun by Vitek. All work on the project was performed after that date while Vitek had an active general contractor's license continuously in effect.

During initial discussions, Leonard Bloom was informed by Alvin Vitek, the responsible managing officer and principal owner of Vitek, that the cost of the project would be about $434,000 and the building permit indicated the cost of the project would approximate that amount. Bloom, however, insisted the contract should specify a $250,000 estimated cost. The written contract ultimately executed by the parties provided a "cost plus" manner of reimbursing Vitek. It stated that all subcontractors' bids

would be in writing and approved by Alvarado, and that reimbursement should be made weekly through a fund control.

The plaintiff encountered constant difficulty in obtaining payment for itself and for the subcontractors and materialmen. The bills and schedules of subcontractors were lost or misplaced by Alvarado repeatedly and when duplicates were sent they too were often lost. Alvarado never set up a fund control system for disbursing sums due the subcontractors as the contract provided but after some difficulties, did set up and used an escrow account. Bloom, representing Alvarado, sent his checks to cover the earlier billings and indicated he did not have time to set up such an account. Change orders were given by Alvarado agents including the architect, the general manager, and Leonard Bloom, the president, and though Vitek requested a memorandum in writing authorizing the changes, in many instances they were not sent. Vitek was told to go ahead with the changes anyway, which it did, and the changes were later approved in writing or otherwise accepted. Vitek repeatedly complained that Alvarado was not living up to the agreement and threatened to shut down the job. In one instance, in April 1969, when outstanding unpaid bills became so extreme, Vitek sent Alvarado notice and actually did shut down the job for two days until funds were provided to pay the then outstanding bills which amounted to $58,000.

Despite the difficulties in getting funds for payment of expenses, the job was completed and accepted by Alvarado. The cost of the completed structure exceeded $460,000.

The findings of fact in the lower court stated, inter alia, the plaintiff was a duly licensed contractor at all times during the performance of contract sued on, and that the "Plaintiff duly, timely and properly performed all of its obligations under said building construction contract."

■ Defendants contend the judgment must be reversed because there is no substantial evidence to support the trial court's finding that plaintiff was a duly licensed contractor at all times[1] and recovery is therefore barred by section 7031 of the Business and Professions Code.[2]

---

[1] The findings included the following statement: "2. Plaintiff was a licensed general building contractor at all times during the performance of the contract sued upon." Defendant argues the findings do not specifically show plaintiff was licensed at the time the contract was executed and he says that is required by section 7031 of the Business and Professions Code.

[2] Unless otherwise indicated, section numbers refer to the Business and Professions Code.

Section 7031 prohibits the bringing or maintaining of any action for collection of compensation *for the performance of any act or contract* for which a license is required without alleging and proving that the person was a duly licensed contractor at all times *during the performance of such act or contract.*[3]

While it may be argued the execution of a construction contract is an act for which a license is required, that act is clearly not an act for which compensation for performance is made. Compensation for performance is made for acts called for in the contract and it is that performance which section 7031 controls.

When the contractor is licensed at the time of execution of the contract and other factors in furtherance of the statutory purpose are present, the courts have often applied a doctrine of substantial compliance to excuse the contractor from having a license "at all times during performance" where the contractor was otherwise qualified and inequity would occur if section 7031 were strictly applied (*Latipac, Inc.* v. *Superior Court,* 64 Cal.2d 278 [49 Cal.Rptr. 676, 411 P.2d 564]). There is no case which applies the doctrine of substantial compliance to excuse the contractor from having the license during performance if he originally acted without a license (*General Ins. Co.* v. *Superior Court,* 26 Cal.App.3d 176, 183 [102 Cal. Rptr. 541]). It is unnecessary in the case before us to resort to this doctrine, however, since there is substantial evidence Vitek began and completed all work after it acquired the license on October 28, 1968.[4] It is not disputed that Vitek's license remained in effect at all times after that date until completion of the contract. There was a finding by the court, which we will not fault, stating all performance was completed while the license was in effect. For this reason we must conclude section 7031 has been satisfied and is not a bar to Vitek's recovery.

When the contractor is unlicensed at the time the contract is executed, however, we are faced with the question whether the contract is illegal and void, therefore unenforceable, wholly apart from section 7031.

[3]Section 7031 reads in part as follows: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract. . . ."

[4]The few acts occurring prior to the execution of the contract, i.e., receiving bids from subcontractors, visiting the site, etc., can be viewed as part of the preliminary negotiations necessary to understand the nature of the undertaking contemplated.

Section 7028 reads as follows: "It is unlawful for any person to engage in the business or act in the capacity of a contractor within this State without having a license therefor, unless such person is particularly exempted from the provisions of this chapter. Any violation of this section is a misdemeanor. If such a person has been previously convicted of the offense described in this section, the court shall impose a fine of not more than one thousand dollars ($1,000), or imprisonment in the county jail for not more than six months, or both."

Many of the cases, by way of dicta, and at least one text writer, have stated a contract executed by an unlicensed person in violation of the law is illegal and void.[5] We are convinced, however, that sort of broad statement is improper where the Legislature itself has defined the sanctions.

■ Undoubtedly, the general rule in this state is that when it appears there is a violation of a regulating statute, the prescribed penalty is the equivalent of an express prohibition and a contract made contrary to its terms is void even though the statute does not pronounce the fact. (*Berka* v. *Woodward,* 125 Cal. 119, 127 [57 P. 777]; *Holm* v. *Bramwell, supra,* 20 Cal.App.2d 332, 336.) The rule is not without exception, however, and before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition or a penalty, or a penalty only for doing a thing which it forbids, the statute must be examined as a whole,

---

[5]See *Holm* v. *Bramwell,* 20 Cal.App.2d 332, 335 [67 P.2d 114], which was decided when the language of section 7031 provided one could not bring or maintain an action without alleging and proving he had a license at the time "the alleged cause of action arose." That case, and those based on the earlier language, might have reason to conclude the contract itself was void since the cause of action could, at least in a proper case of anticipatory breach, arise on the execution. In *Loving & Evans* v. *Blick,* 33 Cal.2d 603, 607 [204 P.2d 23], the court uses similar language when referring to contracts made contrary to the terms of the law but in this case, as in all the cases we have read using this broad language, the unlicensed party was also unlicensed during performance so that he came within the proscription of section 7031. (See also *Grant* v. *Weatherholt,* 123 Cal.App.2d 34 [266 P.2d 185], and *Owens* v. *Haslett,* 98 Cal.App.2d 829 [221 P.2d 252].) A contract which violates section 7031, it may be conceded, is unenforceable. In 1 Witkin, Summary of California Law (8th ed. 1973) at page 337, after discussing the *Latipac* case, *supra,* the author carefully avoids calling the contract of the unlicensed artisan void but says: *"License at time of contracting.* From the standpoint of the ultimate statutory purpose this element has little significance; the statute requires a license during 'performance,' and a license at that time is the important requirement. But in legal theory the element is highly significant: If the contractor is unlicensed at the time the contract is executed, the contract is illegal under general law, irrespective of the provisions of B. & P.C. 7031. (26 C.A.3d 182.) And no case holds the substantial compliance doctrine applicable where the contractor was unlicensed at that time. (26 C.A.3d 183.)" The case at issue does not rely on the concept of substantial compliance.

to find out whether the makers meant a contract in contravention of it should be void (*Harris* v. *Runnels,* 53 U.S. (12 How.) 79 [13 L.Ed. 901]; *Wilson* v. *Stearns,* 123 Cal.App.2d 472, 478 [267 P.2d 59]).

In the leading case of *Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141, 150-151 [308 P.2d 713], the court said: "One answer to this contention is that, even in the absence of a provision such as section 7031, the courts generally will not enforce an illegal bargain or lend their assistance to a party who seeks compensation for an illegal act. The reason for this refusal is not that the courts are unaware of possible injustice between the parties, and that the defendant may be left in possession of some benefit he should in good conscience turn over to the plaintiff, but that this consideration is outweighed by the importance of deterring illegal conduct. Knowing that they will receive no help from the courts and must trust completely to each other's good faith, the parties are less likely to enter an illegal arrangement in the first place. [Citations.]

"In some cases, on the other hand, the statute making the conduct illegal, in providing for a fine or administrative discipline excludes by implication the additional penalty involved in holding the illegal contract unenforceable; or effective deterrence is best realized by enforcing the plaintiff's claim rather than leaving the defendant in possession of the benefit; or the forfeiture resulting from unenforceability is disproportionately harsh considering the nature of the illegality. In each such case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved. [Citations.]" The court in that case found the facts within the legislative proscription of section 7031; as indicated above, we do not.

■ The penalty provisions provided by the Legislature call for imposition of punishment for a misdemeanor where the party acts in the capacity of a contractor (§ 7028) and deny the party the right to bring or maintain the action based on performance (§ 7031). Normally, a court will not impose additional penalties for noncompliance with the licensing requirement. (*City Lincoln-Mercury Co.* v. *Lindsey,* 52 Cal.2d 267, 276 [339 P.2d 851, 73 A.L.R.2d 1420]; and see *S & Q Construction Co.* v. *Palma Ceia Development Organization,* 179 Cal.App.2d 364 [3 Cal.Rptr. 690] (allowed the unlicensed contractor to use his claim under the "illegal" contract as an offset); *Davis Co.* v. *Superior Court,* 1 Cal.App.3d 156 [81 Cal.Rptr. 453] (allowed recovery by unlicensed contractor as a sale of goods independent of the "illegal" contract); *Grant* v. *Weatherholt, supra,* 123 Cal.App.2d 34 (allowed the unlicensed contractor to use fraud in

the execution of the "illegal" contract as a basis for his complaint); *Pickens* v. *American Mortgage Exchange*, 269 Cal.App.2d 299 [74 Cal.Rptr. 788] (permitted alleged unlicensed contractor to show he was entitled to recover as an "employee"); *Comet Theatre Enterprises* v. *Cartwright*, 195 F.2d 80 [30 A.L.R.2d 1229] (denied owner recovery of sums paid to unlicensed contractor for performance pursuant to illegal contract).) This rule of law is predicated on the maxim *expressio unius est exclusio alterius* (*Grant* v. *Weatherholt, supra,* 123 Cal.App.2d 34, 43).

A parallel can be found in other areas of licensing. Most notable is the case of the real estate brokers. In *Wilson* v. *Stearns, supra,* 123 Cal.App.2d 472, 480, the court said: "In determining whether a contract is invalid the courts should strive to deal with the transaction so as to give effect to the fundamental purpose of the Legislature and to a wise public policy. And, in determining whether a real estate broker may be deprived of the value of his services, already admittedly earned, his contract will not be declared invalid upon the basis of anything not embraced within the terms of the applicable statute."

A case more clearly in point is *Houston* v. *Williams*, 53 Cal.App. 267 [200 P. 55], where the real estate broker had no license when he executed the contract for a commission but had his license before he sold the property giving rise to the commission. The contract was held to be enforceable. (See also *Fewel & Dawes, Inc.* v. *Pratt*, 17 Cal.2d 85, 90 [109 P.2d 650], where the rule is approved but the facts distinguished; and see *Norwood* v. *Judd*, 93 Cal.App.2d 276, 284 [209 P.2d 24].)

The courts often make a distinction between acts which are *malum in se* and those which are *malum prohibitum* in that the acts of the former character are viewed as rendering the agreement absolutely void in the sense that no right or claim can be derived from them, while acts of the latter character render the agreement void or voidable according to the nature and effect of the act prohibited. Agreements *malum in se* include all those of an immoral character, those which are inequities in themselves, and those opposed to sound public policy or designed to further a crime or obstruct justice. (See 17 Am.Jur.2d, § 217, pp. 588-589; 12 Cal.Jur.2d, § 99, pp. 298-300.) The instant case clearly presents an act *malum prohibitum*. (*Marshall* v. *Von Zumwalt*, 120 Cal.App.2d 807, 810 [262 P.2d 363]; *Norwood* v. *Judd, supra,* 93 Cal.App.2d 276, 285.) The contract is void only if it falls within the area which the Legislature intended as part of deterrence necessary to protect the public interest.[6]

---

[6]The case of *John E. Rosasco Creameries* v. *Cohen*, 276 N.Y. 274 [11 N.E.2d 908, 118 A.L.R. 641], held a contract to sell milk made in violation of a law requiring milk dealers to be licensed would be upheld if the license was obtained before performance.

Clearly the licensing provision is designed to protect the administration of the licensing law as well as to protect the public from incompetent and untrustworthy artisans. (*Lewis & Queen* v. *N. M. Ball Sons, supra,* 48 Cal.2d 141, 149-150.) Execution of a contract by one acting in the capacity of a contractor is declared a crime (§ 7028); additionally, certain limitations were imposed relative to recovery by civil suit (§ 7031). By this action the Legislature has defined the perimeter of its sanctions. Section 7031 denies all recovery for performance unless the contractor had a license at all times *during performance;* if the Legislature had in mind that the contract was void, it could have acknowledged the fact by omitting the words "during the performance . . ." or said "while so acting." We note, too, in tracing the history of the section that the earlier version provided the claimant had to be licensed "at the time the cause of action arose."[7] That might mean "at the time of execution" in certain cases but the subsequent change of language to read "at all times *during the performance"* dispelled any doubt. That wording extended the time during which the individual had to have the license in effect but made it clear there was no intent to relate back to include the date of execution of the contract. Possession of a license on the date of execution was not a matter of concern to the Legislature in its design for public protection as far as civil remedies are concerned. (See *Norwood* v. *Judd, supra,* 93 Cal.App.2d 276, 284.)

Public protection undoubtedly includes some need to deter individuals from executing contracts in violation of the licensing law. The legislative scheme clearly imposes only criminal sanctions to accomplish that result. In the case before us the facts support the conclusion the plaintiff may have committed a misdemeanor, but we find nothing in the law which allows us to impose civil sanctions not authorized by the statute.

The equities of any other conclusion would work a distinct hardship on the contractor in the case before us, experienced and qualified, which in good faith obtained its license before it began any work for the defendant. It performed in all other respects competently and without injury to any person in the manner contemplated by the licensing law. We are not involved in aiding an incompetent or dishonest artisan. Nor can it be seriously argued that the statutory purposes of public protection would be frustrated by allowing enforcement of a contract fully performed by a licensed contractor whose qualifications for a license were unquestioned and whose only disability was signing the contract one business day before

---

[7] The change was obviously intended to broaden the sanctions on the unlicensed contractor where there was no license in effect during performance but payment was due at a later date, when the cause of action would technically accrue.

the license was issued. The defendant received full value under the terms of the contract. The licensing law should not be used as a shield for the avoidance of a just obligation (*Epstein* v. *Stahl,* 176 Cal.App.2d 53 [1 Cal.Rptr. 143]). The contract must be upheld.

The other contentions of the defendant may be disposed of quickly. There was substantial evidence the work was fully completed by Vitek, in accordance with the plans and specifications. All changes in the plans were at the request and with the approval of Alvarado. The testimony of Alvin Vitek and Donald Goldman, the architect for Alvarado, verifies these facts. Acceptance of the completed job constitutes performance. (Civ. Code, § 1473.)

None of the comments of the trial judge were unwarranted nor do they indicate he had prejudged the case. The time consumed in this case resolving the many oral modifications of a relatively simple written contract would undoubtedly try the patience of any court. In view of the circumstances of each "episode" complained of by defendant, we find the comments were not unreasonable.

Both plaintiff and defendants asked for attorney fees for prosecution of this appeal relying on the terms of the contract and Civil Code section 1717. No legal cause exists why fees should not be allowed and the determination of the amount rests most appropriately with the trial court on a showing of nature of the services and the time involved. (*Berven Carpets Corp.* v. *Davis,* 210 Cal.App.2d 206 [26 Cal.Rptr. 513]; *Cal. Viking Sprinkler Co.* v. *Cheney,* 182 Cal.App.2d 564 [6 Cal.Rptr. 197].) In view of the fact that plaintiff is the prevailing party it is entitled to additional attorney fees.

Judgment affirmed and the cause remanded with direction to the trial court to determine a reasonable attorney fee for services performed on appeal and add such fee to the principal amount of the judgment.

Whelan, Acting P. J., and Ault, J., concurred.

A petition for a rehearing was denied October 26, 1973, and appellants' petition for a hearing by the Supreme Court was denied January 3, 1974.

sion to a licensed real estate broker, even though the agreement to pay the commission named an unlicensed corporation as the recipient of the fee, where the court expressly found that valuable services were performed individually by the licensed broker and impliedly found that he was merely doing business under a fictitious name. The purpose of the licensing law is to protect the public from the perils incident to dealing with incompetent or untrustworthy brokers, and it should not be so literally construed as to require exact compliance if it would transform the statute into an unwarranted shield for the avoidance of a just obligation.