[Civ. No. 32777. First Dist., Div. Three. May 8, 1974.]

JAMES S. WEEKS, Plaintiff and Appellant, v.
MERRITT BUILDING AND CONSTRUCTION COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Sedgwick, Detert, Moran & Arnold and John B. Marchant for Plaintiff and Appellant.

Frederick A. Cone for Defendants and Respondents.

**OPINION**

**BROWN (H. C.), J.**—The sole issue presented here is whether the trial court erred in holding that appellant's action for compensation as an electrical subcontractor in the construction of a highrise apartment house is barred by the provisions of section 7031 of the Business and Professions Code.*

The issue was presented to the court on a stipulated statement of facts. It was also stipulated by the parties "that this special defense shall be tried first, and in the event it is not sustained, the matter will then be given a trial date on the merits." The statement of facts disclosed that James S. Weeks, doing business as Weeks Electric, was awarded the subcontract for

---

*All references are to the Business and Professions Code unless otherwise specified.

the electrical work in the construction of a highrise apartment building in Oakland. Pursuant to the subcontract, Mr. Weeks furnished a surety performance bond issued by the Continental Insurance Companies (hereinafter Continental) and commenced work under the subcontract. At all times Mr. Weeks held a contractor's license as required by section 7031.

In May of 1966, Mr. Weeks notified Continental that he could not complete performance of the subcontract unless Continental gave him assistance to meet his payroll. Continental and Mr. Weeks agreed to the opening of bank accounts into which Continental was to advance monies and all progress payments from Merritt Building and Construction Co. and Singleton Corporation (hereinafter Merritt-Singleton) were to be deposited. The accounts were in the name of Weeks Electric but were to require the signatures of both Mr. Weeks and a representative of Continental. A further provision of the agreement was that Mr. Weeks would come to Oakland and personally supervise the completion of the subcontract.

From May 19, 1966, until he suffered a heart attack on or about November 1, 1966, Mr. Weeks exercised personal supervision over the performance of the subcontract and handled overall job administration.

When Mr. Weeks had his heart attack, he notified Continental that he would be unable to personally supervise the work. Continental contacted Contract Surety Consultants and a representative of Continental and Contract Surety Consultants met with Mr. Weeks. A memorandum of the meeting states that "It was agreed by Mr. Weeks that they take over the job for him, that is, the Contract Surety Consultants."

Warren Brown, representative of Contract Surety Consultants, took over administration of the electrical subcontractor's office at the project. On November 18, 1966, Mr. Weeks executed an assignment of his rights under the subcontract to Continental. After this time, Mr. Weeks no longer had check-signing authority on the joint control accounts which continued in the name of Weeks Electric. All checks were signed jointly by Mr. Brown and Continental. He received no further progress reports concerning the project. It was Mr. Weeks' belief that he had neither control nor the right of control over the performance of the subcontract. Joe Vavotec, the on-site superintendent, reported directly to Mr. Brown, and when he was replaced as on-site superintendent, it was by a man selected by Mr. Brown. Mr. Brown was paid from the joint control accounts. Contract Surety Consultants, separate and apart from any salary paid to Warren Brown, submitted bills for its services to Continental, which paid these bills directly and not from the joint control accounts.

Warren Brown was not licensed as required by section 7031, nor was such a license held by Contract Surety Consultants or Continental.

In November 1966, the subcontract was 73 percent complete. The amount claimed as against Merritt-Singleton in this instant litigation is $37,457.22, representing the difference between the final adjusted subcontract price of $148,204.65 on the one hand and the progress payments of $109,691.76 and credits and accepted back charges in the sum of $1,592.72 on the other.

Section 7031 of the Business and Professions Code provides in relevant part as follows: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract, . . . ."

Applied literally, the language of section 7031 would not preclude Mr. Weeks from maintaining his action. Mr. Weeks brought the action and he was at all relevant times the holder of the required license.

Respondents' position, however, is that, under the special facts present here, the person to whom the license requirement applies is the person who actually performed the contract. Respondents contend that Mr. Weeks was not even the proper person to bring the suit because he had assigned all rights to the contract to Continental. This contention does not dispose of the question now presented, i.e., application of the bar of section 7031. Had the assignee for security (Continental) actually brought the suit as he had the right to do (*Reios* v. *Mardis* (1912) 18 Cal.App. 276, 280 [122 P. 1091]; see 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 99, p. 1775), clearly it would be the license of the assignor which would be material, not the license of the assignee. (See *Walker* v. *Nitzberg* (1970) 13 Cal.App.3d 359 [91 Cal.Rptr. 526].) In *Walker* v. *Nitzberg,* the assignee of a building contractor brought suit against the homeowner for paying the building contractor after notice of assignment. The contractor (assignor) was unlicensed and the homeowner was allowed to defend on the ground of illegality.

The assignment of the right to receive the money under the contract, in the instant case, was not the fact which brought into play the bar of section 7031. Rather it was the fact that Mr. Weeks relinquished any control over the performance of the contract after his heart attack. Nothing

in the language of section 7031 expressly specifies that the contracting party may not recover if he has abrogated duties of performance. The section merely states that he must have a license "during the performance of . . . [the] contract." It may be inferred from this language, however, that it is the person who performs the contract who must have the required license, not just the person who happens to have a right to maintain a suit for money owed under the contract. A contrary interpretation would be contrary to the purpose of the section. "The licensing requirements in regulation of the contracting business were enacted 'for the safety and protection of the public' against imposition [citation], and such public policy may not be circumvented according to the manner in which application is first made to the court for relief." (*Franklin* v. *Nat C. Goldstone Agency* (1949) 33 Cal.2d 628, 632 [204 P.2d 37].) The court in *Franklin* v. *Nat C. Goldstone Agency* would not permit enforcement of an invalid claim "through the transforming process of arbitration." (At p. 632.) Similarly, the public policy would be circumvented if a licensed contractor could contract, abrogate performance to an unlicensed contractor and recover on the contract.

Other sections of the Contractors' License Law (§ 7000 et seq.) show more specifically a purpose of insuring against the possibility that unlicensed persons will complete projects initiated by a properly licensed person. If a member of a licensed partnership disassociates himself, the remaining partners may complete the work in progress only if they apply for and receive permission from the registrar. (§ 7076.) The same rule applies if a licensee dies, in which case a member of the immediate family may continue the business for a reasonable period of time but only with the permission of the registrar. (§ 7076.)

It is grounds for discipline under sections 7114 and 7118 that a licensee enter into contracts with unlicensed persons, knowing them to be unlicensed to perform work as contractors. (*Barry* v. *Contractors State License Board* (1948) 85 Cal.App.2d 600, 605 [193 P.2d 979].) Under sections relevant to corporations or other organizations, it is grounds for discipline to fail to give notice to the registrar when the person holding the required license, the responsible managing officer or employee, is no longer connected with the business. (§ 7068.2.) Indeed, failure to replace the responsible managing employee bars recovery for work performed after his departure. (*Famous Builders, Inc.* v. *Bolin* (1968) 264 Cal.App.2d 37, 40-41 [70 Cal.Rptr. 17].)

The instant case does not present a situation where relief from the bar of section 7031 is appropriate under the concept of "substantial compliance." This concept is appropriate where despite some failure of literal

compliance with the licensing requirements "the party seeking to escape his obligation has received the full protection which the statute contemplates." (*Latipac, Inc.* v. *Superior Court* (1966) 64 Cal.2d 278, 280 [49 Cal.Rptr. 676, 411 P.2d 564]; see also *Gatti* v. *Highland Park Builders, Inc.* (1946) 27 Cal.2d 687 [166 P.2d 265]; *Vitek, Inc.* v. *Alvarado Ice Palace, Inc.* (1973) 34 Cal.App.3d 586 [40 Cal.Rptr. 86].)

Clearly, in the situation at hand, respondents did not receive "the full protection which the statute contemplates," which is work performed by or under the supervision of a licensed contractor. It is concluded that the trial court did not err in its decision that the present action was barred by section 7031.

The judgment is affirmed.

Devine, J.,* concurred.

**DRAPER, P. J.**—I concur, but with extreme reluctance. Under the unusual circumstances here shown, it seems grossly unfair to place upon appellant the substantial loss involved. I cannot, however, find any way of articulating an exception to cover this hardship case which would not also permit future evasion by others of the salutary purpose of the Contractors' Licensing Act.

A petition for a rehearing was denied June 7, 1974, and appellant's petition for a hearing by the Supreme Court was denied July 3, 1974.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.