[Civ. No. 2500. Fifth Dist. Aug. 27, 1976.]

ERIC RUSHING, Plaintiff, Cross-defendant and Respondent, v.
DOROTHY POWELL et al.,
Defendants, Cross-complainants and Appellants;
KEITH HUTCHISON, Cross-defendant and Respondent.

**COUNSEL**

Lyman D. Griswold, Louis F. Bissig, Michael E. LaSalle and Steven W. Cobb for Defendants, Cross-complainants and Appellants.

Moran, Stringham & Rogers and William J. Kadi for Plaintiff, Cross-defendant and Respondent.

No appearance for Cross-defendant and Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—The defendants and cross-complainants, Dorothy Powell and Virginia Jehnzen doing business as El Monte Mobile Home Village, appeal from a judgment[1] entered in favor of plaintiff, Eric Rushing, and cross-defendants, Eric Rushing and Keith Hutchison, after a trial by the court sitting without a jury. The first cause of action is for the sum of $5,107.40, representing the amount due for services

[1]Defendants purport to appeal from a judgment entered April 16, 1974, and also from a judgment entered May 15, 1974. Since there can be only one final judgment in an action and the judgment entered April 16, 1974, is interlocutory in nature, we will treat the appeal as being from the May 15 judgment only.

performed and materials furnished by plaintiff to the defendants pursuant to a written contract for the construction of a swimming pool. The second and third causes of action are common counts for the sum of $198.73. The cross-complaint sought damages for alleged breach of contract and failure to construct the pool in accordance with the plans and specifications.

The defendants and cross-complainants do not challenge on this appeal the implied finding that the contract was breached by them and that they are not entitled to recover on their cross-complaint, but are urging only that the trial court erred in holding that the plaintiff properly complied with the California fictitious business name statute (Bus. & Prof. Code,[2] § 17900 et seq.—particularly § 17918)[3] and in determining that plaintiff had substantially complied with the Contractors License Law (§ 7000 et seq.—particularly § 7031).[4]

Plaintiff held an individual contractor's license as a concrete contractor, referred to as Class C-8. One Junior Ray Anderson was licensed by the state as a swimming pool contractor, referred to as Class C-53. Each license category is issued to authorize the licensee to engage in the specialty contracting business in the particular field of work for which his license is issued and each is prohibited from acting in the capacity of a contractor in any classification other than the one in which he is classified. (Cal. Admin. Code, tit. 16, § 760, subds. (c), (e).)

On January 13, 1969, plaintiff and Anderson entered into a verbal arrangement whereby they obtained from the California Contractors' State License Board a joint license to engage in swimming pool construction (Class C-53) under the name of Stardust Pools. Stardust facially qualified for the issuance of the joint swimming pool contractor's license through the appearance of Anderson, who was represented to be

---

[2]All code references will be to the Business and Professions Code unless otherwise indicated.

[3]Section 17918 provides in pertinent part: "No person transacting business under a fictitious business name contrary to the provisions of this chapter, or his assignee, may maintain any action upon or on account of any contract made, or transaction had, in the fictitious business name in any court of this state until the fictitious business name statement has been executed, filed, and published as required by this chapter."

[4]Section 7031 provides in relevant part: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract, . . ."

a member of Stardust, under the provisions of section 7068[5] and California Administrative Code, title 16, sections 717,[6] 718[7] and 724.[8] Because Anderson was already licensed as a swimming pool contractor, the examination and demonstration of fitness usually required of applicants (see Cal. Admin. Code, tit. 16, §§ 764, 765) were waived. (See Cal. Admin. Code, tit. 16, § 774.)

In return for the use of Anderson's name to procure the C-53 license in the name of Stardust Pools, plaintiff transferred to Anderson equipment valued at $6,000. The evidence is without contradiction that Anderson at no time performed any function whatsoever in the management or operation of the business. He participated in no pool construction, was not consulted in connection therewith, shared no management prerogatives and incurred no profit opportunity. Moreover, for a period of time

[5]Business and Professions Code section 7068 provides: "The board shall require an applicant to show such degree of knowledge and experience in the classification applied for, and such general knowledge of the building, safety, health and lien laws of the state and of the administrative principles of the contracting business as the board deems necessary for the safety and protection of the public. An applicant shall qualify in regard to his experience and knowledge in one of the following ways:

"(a) If an individual, he shall qualify by personal appearance or by the appearance of his responsible managing employee.

"(b) If a copartnership or a limited partnership, it shall qualify by the appearance of a general partner or a responsible managing employee.

"(c) If a corporation, or any other combination or organization, it shall qualify by the appearance of the responsible managing officer, the responsible managing employee, or a member of the personnel of such applicant.

"A responsible managing employee for the purpose of this chapter shall mean an employee who is regularly employed by the applicant and is actively engaged in the classification of work for which such responsible managing employee is the qualifying person in behalf of the applicant."

[6]California Administrative Code, title 16, section 717, provides in part: ". . . any license issued to any association of persons, . . . each member of which association holds a separate license, current, valid, and in good standing. Upon application of the association the joint license will be issued in the classification or classifications in which any of the members thereof are licensed."

[7]California Administrative Code, title 16, section 718, provides in part: "(a) An application for a joint license shall be made upon the form prescribed and furnished by the Registrar and shall be signed by one member of the personnel of each licensee comprising the joint venture. No examination or references shall be required."

[8]California Administrative Code, title 16, section 724, provides in part: "Every applicant for a contractor's license must have had, within the last 10 years immediately preceding the filing of the application, not less than four years experience as a journeyman, foreman, supervising employee or contractor in the particular class within which the applicant intends to engage as a contractor.

". . . . . . . . . . . . . . . . . . . . . . .

"The required experience shall be possessed by one member of the applicant entity or by a responsible managing employee therefor and he shall be required to take the examination."

in 1969 and 1970, ending on October 15, 1970, plaintiff associated himself with one Lewis G. Galloway in a partnership doing business as Stardust Pools and no notification of the change was sent to the Contractors' State License Board. Thereafter, and on April 29, 1971, plaintiff filed a "Notice of Dissolution of Partnership and Certificate of Doing Business Under Fictitious Name" in which he certified under penalty of perjury that "[t]he business . . . will be conducted by the undersigned, Eric A. Rushing, . . . under the fictitious name of Stardust Pools." This individual fictitious name certificate is the certificate upon which plaintiff relies in this proceeding as demonstrating compliance with section 17918 (see fn. 3, *ante*).

The contract which is the subject of this suit was signed by cross-defendant Keith Hutchison, who was a salesman on behalf of Stardust Pools, and the defendants on June 30, 1972, and performance thereunder was allegedly completed on or about August 15, 1972.[9]

The issues of failure to comply with the fictitious business name statute and the Contractors License Law were raised by demurrer and again at the pretrial conference and by motion for nonsuit. At the conclusion of the evidence the court entered its findings of fact and conclusions of law in which it found that the Contractors License Law had been substantially complied with, that a valid fictitious name certificate was not on file, and concluded that the plaintiff was entitled to judgment for the amounts prayed and ordered that the action be abated until such time as a fictitious business name statement was filed showing Anderson and plaintiff had done business as Stardust Pools.

Approximately one month later, on May 15, 1974, the court took judicial notice that the fictitious name statute had been complied with when "a Fictitious Business Name Statement showing that plaintiff Eric Rushing and Junior Ray Anderson formerly did business as Stardust Pools was filed with the Clerk of Tulare County on April 10, 1974 and that an Affidavit showing publication of the Statement was filed with the Tulare County Clerk on May 9, 1974. . . ." The court thereupon signed and entered a money judgment for the plaintiff.

Since the result herein will turn in large measure upon the proper interpretation of the applicable statutes, a brief review of certain well established rules of interpretation will guide the way. ■ Statutes

---

[9]The joint license was canceled in November 1972.

must be given a fair and reasonable interpretation, with due regard to the language used and the purpose sought to be accomplished. (*Cedars of Lebanon Hosp.* v. *County of L. A.* (1950) 35 Cal.2d 729, 734-735 [221 P.2d 31, 15 A.L.R.2d 1045]; *People* v. *Sciortino* (1959) 175 Cal.App.2d Supp. 905, 908-909 [345 P.2d 594].) ▪ Words of a statute must be given such interpretation as will promote rather than defeat the general purpose and policy of the law. (*City of L. A.* v. *Pac. Tel. & Tel. Co.* (1958) 164 Cal.App.2d 253, 256-257 [330 P.2d 888].) ▪ Moreover, legislative intent should be gathered from the whole act rather than from isolated parts or words. (*People* v. *King* (1952) 115 Cal.App.2d Supp. 875, 878 [252 P.2d 78]; *People* v. *Sciortino, supra,* 175 Cal.App.2d Supp. 905, 909.) ▪ The object sought to be achieved by the statute and the evil sought to be prevented are of prime consideration in its interpretation. (*Freedland* v. *Greco* (1955) 45 Cal.2d 462, 467 [289 P.2d 463].) ▪ Finally, although the courts are not at liberty to impute a particular intention to the Legislature when nothing in the language of the statute implies such intention, where the main purpose of the statute is expressed the courts will construe it so as to effectuate that purpose by reading into it what is necessary or incident to the accomplishment of the object sought. (See *Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 810-811 [151 P.2d 505, 157 A.L.R. 324]; *Struckman* v. *Board of Trustees* (1940) 38 Cal.App.2d 373, 376 [101 P.2d 151].) ▪ See *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049]:

"Once a particular legislative intent has been ascertained, it must be given effect ' "even though it may not be consistent with the strict letter of the statute." ' [Citation.] As we stated nearly a half century ago in *In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883]:

' "The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." ' "

▪ Turning first to the contractor's license issue, it is settled that the law is intended to protect the public against dishonesty and incompetence in the operation of the contracting business and in the performance of contract services. (*Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d

141, 149-150 [308 P.2d 713]; *Vitek, Inc.* v. *Alvarado Ice Palace, Inc.* (1973) 34 Cal.App.3d 586, 594 [110 Cal.Rptr. 86].)[10]

■ The Supreme Court has also made clear that "Section 7031[11] represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of the state." (*Lewis & Queen* v. *N. M. Ball Sons, supra,* 48 Cal.2d at p. 151; *Vitek, Inc.* v. *Alvarado Ice Palace, Inc., supra,* 34 Cal.App.3d at p. 592.) An essential ingredient to the accomplishment of this public purpose is assurance that persons performing particular types of specialty contracting are qualified by training and experience. To hold that a person not so qualified can nevertheless act as a contractor in the particular field of work would be inimical to that purpose and objective and would emasculate certain clear expressions of the act. ■ The plaintiff herein was not required to personally qualify as a swimming pool contractor by taking an examination or demonstrating his competence but was able to participate in the business of swimming pool construction only by virtue of Anderson's license. The total inactivity of Anderson in the swimming pool construction enterprise permitted the plaintiff in substance to engage in a specialty in which he had not demonstrated qualification by taking and passing the appropriate examination and for which he had not been licensed as an individual, in violation of the stated purpose and of the spirit of the Contractors License Law. (See *Weeks* v. *Merritt Bldg. & Constr. Co.* (1974) 39 Cal.App.3d 520, 524-525 [114 Cal.Rptr. 209].)

This conclusion is deducible from the statutory provisions themselves. Those provisions place weighty emphasis upon the necessity of an applicant himself or "the responsible managing officer, the responsible managing employee, or a member of the personnel of such applicant" demonstrating experience and knowledge. (See § 7068 (fn. 5, *ante*), Cal.

[10]A specific provision is contained in the Administrative Code exemplifying this intent. That section states: "The board interprets the primary intent of the Legislature in enacting Chapter 9, Division 3 of the Business and Professions Code to be the protection of the health, safety, and general welfare of all those persons dealing with persons engaged in the building contracting vocation, and the affording to such persons of an effective and practical protection against the incompetent, inexperienced, unlawful and fraudulent acts of building contractors with whom they contract. All rules, regulations or orders adopted by the Board or its registrar shall be interpreted and construed in light of the policies announced herein." (Cal. Admin. Code, tit. 16, § 701.)

[11]See footnote 4, *ante.*

Admin. Code, tit. 16, § 724 (fn. 8, *ante*).) The requirement of an examination and demonstration of competence is excused only if such person qualifies as already being licensed in the particular specialty. (See Cal. Admin. Code, tit. 16, §§ 717, 718 (fns. 6, 7, *ante*).) From these provisions it is readily inferable that the Legislature intended that the persons so qualified on behalf of the business entity be active participants in the business.

Section 7068.1 supports this interpretation by making clear that the individual qualifying on behalf of a business firm exercise supervision and control over the construction operations. That section expressly provides: "The person qualifying on behalf of an individual or firm under subdivision (a), (b) or (c) of Section 7068 shall be responsible for exercising such direct supervision and control of his employer's or principal's construction operations as is necessary to secure full compliance with the provisions of this chapter and the rules and regulations of the board relating to such construction operations . . . ." In the case at bench Anderson did not participate in the business at all, thus violating the statute and rendering the purported C-53 license a nullity.

An additional consequence of holding otherwise would be to render inoperative the provisions of section 7068.2,[12] which section is designed to require the individual who has qualified for the license as the responsible managing officer or employee, and who has ceased to have that relationship to the business, to promptly notify the licensing board; and, upon his failure to do so, to provide for the automatic suspension of the joint license issued by reason of that individual's qualifications. If the licensed member of a joint venture could be or become totally inactive, thus not qualifying as the responsible managing officer or employee of the joint venture, then by its terms this section would not operate to cause the suspension of the joint license, being limited as it is to the individual qualifying for the license who is a responsible managing officer or employee. Obviously, the Legislature contemplated that only a responsible managing officer or employee's license would be used to qualify for a joint license.

---

[12]Section 7068.2 provides in part:

"If the individual qualifying for the license is a responsible managing officer or responsible managing employee and ceases for any reason whatsoever to be connected with the individual or firm to whom the license is issued, the licensee and the responsible managing officer or responsible managing employee qualifying for such license shall notify the registrar in writing within 30 days from such cessation. If a notice is given the

The result we have reached is buttressed by case law. In *Frank* v. *Kozlovsky* (1970) 13 Cal.App.3d 120 [91 Cal.Rptr. 297], the court held that where a partner had departed from the licensed partnership the license was thereby terminated and the continuing party could not sue for work accomplished under the terminated license, emphasizing that to hold otherwise would be to defeat the expressed legislative policy of deterring unlicensed persons from engaging in the contracting business. In *Weeks* v. *Merritt Bldg. & Constr. Co., supra,* 39 Cal.App.3d 520, it was held that the policy of the contractors' licensing requirements of protecting the public against imposition and assuring unlicensed persons would not engage in the contracting business would be circumvented if a licensed contractor could contract and then delegate performance to an unlicensed contractor and recover on the contract. (See 39 Cal.App.3d at pp. 524-525.)

As was said in *Weeks,* "Clearly, in the situation at hand, respondents did not receive 'the full protection which the statute contemplates,' which is work performed by or under the supervision of a licensed contractor." (39 Cal.App.3d at p. 525.) The same observation can be made in the case at bench. Moreover, there is no support in the record for the conclusion that the plaintiff herein substantially complied with the Contractors License Law. (See *Latipac, Inc.* v. *Superior Court* (1966) 64 Cal.2d 278 [49 Cal.Rptr. 676, 411 P.2d 564].) Accordingly, we conclude that the suit on the contract for the amount due on the first cause of action must fail because the plaintiff did not comply with the Contractors License Law.

▆▆ Regarding the common count items contained in the second and third causes of action for $198.35, the defendants have conceded in their brief that these items were "incidental items furnished outside of the contract's scope." Recovery for this amount therefore is not barred by failure to comply with the Contractors License Law. (*Skipper* v. *Gilbert J. Martin Constr. Co.* (1957) 156 Cal.App.2d 82, 86 [318 P.2d 732].) It

license shall remain in force for a reasonable length of time to be determined by rules of the board.

"If the licensee or his responsible managing officer or responsible managing employee qualifying for the license fails to notify the registrar in writing within the 30-day period, at the end of the period the license shall be automatically suspended. The license shall be reinstated upon the qualification of an individual in place of the responsible managing officer or responsible managing employee who has ceased to be connected with the licensee."

follows that we must discuss the issue of whether plaintiff complied with the fictitious business name statute. (See § 17918 (fn. 3, *ante*).)

As has been pointed out, the court found that the certificate of doing business as an individual which was on file did not satisfy the statute and ordered abatement of the final entry of the judgment until a fictitious business name statement was filed showing that Anderson and plaintiff had done business as Stardust Pools. In this connection, it is interesting to note, however, that the judgment was entered in favor of plaintiff as an individual, the suit having been commenced and prosecuted in his name alone. In view of the court's finding that there was substantial compliance with the Contractors License Law, it is apparent that the reason the court ordered the filing of the fictitious business name statement showing that Anderson had been involved in the operation was to support the judgment on the contract.

However, a close examination of the evidence has convinced us that there is no substantial support in the record for a finding that plaintiff was not doing business as an individual. In addition to the admitted fact that Anderson did no more than lend his name to the enterprise, plaintiff himself maintained throughout that he was doing business strictly as an individual. He, of course, filed a certificate of doing business as an individual, and he testified that he had no business relationship with Anderson. He further answered:

"Q  Are you involved in any partnership or—

"A  No.

"Q  In other words, you are a sole proprietorship at this time?

"A  Yes.

"Q  And what is the name of that?

"A  That's Stardust Pools and pool builder."

Accordingly, we conclude that the court erred in finding that plaintiff had not complied with the fictitious business name statute by filing a certificate showing that he was doing business as an individual. That certificate was valid and sufficient to authorize recovery upon the second and third causes of action.

Having so concluded, it is unnecessary for us to discuss or decide the validity of the court's order abating the action after all of the evidence had been received and the judge had decided the case for the purpose of giving plaintiff an opportunity to file a fictitious business name statement. It is also unnecessary to pass upon the procedure by which the court took judicial notice of the subsequent filing of the fictitious business name statement.

That part of the judgment awarding to plaintiff the sum of $5,107.40 plus interest is reversed, and that part of the judgment awarding plaintiff the sum of $198.73 is affirmed. The judgment in favor of the cross-defendants is affirmed. The trial court is ordered to set aside its findings of fact and conclusions of law and the judgment entered thereon, to prepare new findings of fact and conclusions of law and to enter a new judgment thereon, all in conformity with this opinion.

Each party to bear his or her own costs on appeal.

Franson, J., and Thompson, J.,* concurred.

The petition of the plaintiff and respondent for a hearing by the Supreme Court was denied October 21, 1976.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.