[Civ. No. 41960. First Dist., Div. Two. Apr. 23, 1979.]

JESSIE BROWN, Plaintiff and Appellant, v.
SOLANO COUNTY BUSINESS DEVELOPMENT, INC., et al.,
Defendants and Respondents.

■

## COUNSEL

Richard S. Gerdes for Plaintiff and Appellant.

Petty, Andrews, Tufts & Jackson, Thornton E. Robison, David T. Alexander and Ellen McGinty King for Defendants and Respondents.

## OPINION

**KANE, Acting P. J.**—Plaintiff Jessie Brown (appellant or Brown) appeals from a summary judgment rendered in favor of respondents Solano County Business Development, Inc. (SCBD), Lestee Ceasar and Loreta Ceasar (the Ceasars).

SCBD is a nonprofit California corporation which, together with the Small Business Administration, worked on developing a shopping center in Solano County. The Ceasars are individual members of the corporation, and Lestee Ceasar is the executive director of SCBD.

On or about April 29, 1974, SCBD entered into a contract with Per Sac Enterprises (not a party to this action) for the construction of a shopping center. On August 23, 1974, the contract was assigned to appellant with the consent of all parties concerned. At the time of the assignment, Brown was a duly licensed contractor.

Sometime in June 1975, nearly 10 months after signing the assignment, Brown commenced performance under the construction contract. Two or three weeks later, on June 30, 1975, Brown's contractor's license expired. The record unequivocally shows that during the ensuing six and a half months (until Jan. 16, 1976), appellant continued to perform under the contract without a valid license and remained unlicensed throughout the proceedings below.

On July 12, 1976, Brown filed a complaint against SCBD and the Ceasars to recover $34,961.53, the balance due under the construction contract. Respondents answered, denying all material allegations of the complaint, and asserting a variety of affirmative defenses.

During the course of discovery, it was learned that the contractor's license of appellant had expired on June 30, 1975. Thereupon, respondents moved for summary judgment on the ground that appellant performed the majority of the construction work without a valid license, and thus was barred from recovery pursuant to Business and Professions Code,[1] section 7031. After considering the pleadings, the products of discovery, the affidavits supporting and opposing the motion and the legal arguments of the parties, the trial court granted respondents' motion for summary judgment and simultaneously therewith ordered that appellant's claim of mechanic's lien be expunged from the records of the Solano County Recorder's office.

Brown does not dispute that he was unlicensed for six and a half months, the very period during which the major part of the contract was performed, and that as a consequence he fell within the ambit of section 7031 which precludes recovery unless the contractor was licensed at all times during his performance.[2] Rather, relying mainly on *Latipac, Inc.* v. *Superior Court* (1966) 64 Cal.2d 278 [49 Cal.Rptr. 676, 411 P.2d 564], he contends that literal compliance with the statute has not been insisted upon by the courts; and that where there has been substantial compliance with the cited section, the contractor is entitled to compensation even if he was not licensed at all times during the performance of the construction contract. Appellant's argument is not well taken.

In *Latipac,* the majority of the Supreme Court laid down three criteria for showing that a plaintiff contractor has substantially complied with section 7031. These criteria are: (1) that the plaintiff held a valid license at the time of contracting; (2) that he readily secured a renewal of his license; and (3) that the responsibility and competence of plaintiff's managing officer were officially confirmed throughout the entire period of performance under the contract (pp. 281-282. Accord: *General Ins. Co.* v. *Superior Court* (1972) 26 Cal.App.3d 176, 181 [102 Cal.Rptr. 541]; *Frank* v. *Kozlovsky* (1970) 13 Cal.App.3d 120, 124 [91 Cal.Rptr. 297]; *Lewis* v. *Arboles Dev. Co.* (1970) 8 Cal.App.3d 812, 822 [87 Cal.Rptr. 539]).

---

[1]Unless otherwise indicated, all further references will be made to the Business and Professions Code of California.

[2]Section 7031 provides that "*No* person engaged in the business or acting in the capacity of a *contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract,* except that such prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029." (Italics added.)

The record here discloses that appellant was able to prove only the first of the three elements set out in *Latipac,* i.e., that he possessed a valid contractor's license at the time of contracting and during a brief initial period of performance. At the same time, the record establishes that appellant did not "readily" secure a renewal of his license. In point of fact, appellant offered no proof that his license was ever renewed or validated. Moreover, it was shown that during the disputed period extending from July 1, 1975, until January 16, 1976, appellant did not employ any supervisory personnel possessing a license and that all construction work in said period was performed without the assistance, supervision and expertise of a licensed contractor. Since appellant failed to comply with two of the three conditions laid down in *Latipac,* his claim of substantial compliance must be rejected.

Appellant's insistence that the meeting of all three *Latipac* elements is not an absolute prerequisite to finding substantial compliance and that where, as here, the contractor was licensed at the time of entering into the contract and held a valid license bond throughout the contractual performance, the doctrine of substantial compliance may be properly invoked, is unsupported by legal authorities.

■ The purpose of the Contractors' License Law is to protect the public by prohibiting dishonest, incompetent, inexperienced or financially irresponsible persons from acting as building contractors (*Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 149-150 [308 P.2d 713]; *Gatti* v. *Highland Park Builders, Inc.* (1946) 27 Cal.2d 687, 690 [166 Cal.Rptr. 265]; *Rushing* v. *Powell* (1976) 61 Cal.App.3d 597, 604 [130 Cal.Rptr. 110]). Consistent therewith, it has been held that the *invocation of substantial compliance is appropriate where* despite some failure of literal compliance with the licensing requirements *the party* seeking to escape his obligation *has received the full protection which the statute contemplates* (*Weeks* v. *Merritt Bldg. & Constr. Co.* (1974) 39 Cal.App.3d 520, 524-525 [114 Cal.Rptr. 209]; *Vitek, Inc.* v. *Alvarado Ice Palace, Inc.* (1973) 34 Cal.App.3d 586 [110 Cal.Rptr. 86]).

We believe the aforestated policy objective of protecting the public from dishonest, incompetent and financially irresponsible contractors is not satisfied by the mere showing that appellant had a valid contractor's license at the time of entering into contract with respondents and held a $2,500 license bond throughout the performance of the contract. On the contrary, it clearly appears that the legal policy of protecting the obligee requires an assurance that the contractual work be carried out with

continued honesty and competence, an assurance which is best provided by the requirement that the contractor substantially comply with section 7031. The additional *Latipac* criteria, that is the renewal of license without delay and the presence and assistance of a licensed manager or other licensed person during the performance of the contract, therefore figure not only as abstract legal standards, but also as proof of continued honesty and competence in performing the construction contract.

The above proposition is well supported by *Latipac* itself, where in passing upon the importance of the prompt renewal of the contractor's license the Supreme Court stated: "Just as plaintiff's possession of a valid contractor's license at the time of contracting attests to its competence and responsibility at the inception of the contract, so *the renewal of its license after completion of performance lends confirmation to plaintiff's continuing competence and responsibility during the period of performance.*" (64 Cal.2d at p. 283, italics added.)

It also bears emphasis that in determining whether a contractor whose license expired during the performance of the contract substantially complied with section 7031 and thus was entitled to recovery under the contract, the cases attach great significance to the fact that the performance of the contract was completed with the assistance and supervision of another licensed person. In point of fact, in all instances (including *Latipac*) where substantial compliance was found, the construction work in dispute was performed under the supervision of a licensed manager or other person who possessed a valid contractor's license. As the court stated in *Bierman* v. *Hagstrom Construction Co.* (1959) 176 Cal.App.2d 771, 777 [1 Cal.Rptr. 826, 82 A.L.R.2d 1424]: "Appellant cites *Gatti* v. *Highland Park Builders, Inc.*, 27 Cal.2d 687 [166 P.2d 265]; *Citizens State Bank* v. *Gentry,* 20 Cal.App.2d 415 [67 P.2d 364]; and *Weiman* v. *Superior Court,* 51 Cal.2d 710 [336 P.2d 489]. In those cases it was held that the contractor had substantially complied with the licensing provisions of the code. Those cases are distinguishable from the present case. In the Gatti case the question was whether individuals, who were partners, could recover for work done by the partnership, which was not licensed. The individuals were licensed at all times during the performance of the work. In the other cases, wherein the question was whether a corporation could recover, it appeared that the individual who formed the corporation, or the corporation itself, had a license at all times during the performance of the work. *In other words, in those cases someone had a license at all times during the performance of the work.*" (Italics added. See to the same effect: *Rushing* v. *Powell, supra,* 61 Cal.App.3d 597; *Weeks* v. *Merritt Bldg. &*

*Constr. Co., supra,* 39 Cal.App.3d 520; *Vitek, Inc.,* v. *Alvarado Ice Palace, Inc., supra,* 34 Cal.App.3d 586; *General Ins. Co.* v. *Superior Court, supra,* 26 Cal.App.3d 176; *Oddo* v. *Hedde* (1950) 101 Cal.App.2d 375 [225 P.2d 929]).

We finally note that appellant's reference to the alternative remedy of misdemeanor sanctions (cf. § 7028) and equitable considerations is likewise unavailing. ■ As the courts have pointed out, by enacting section 7031 the Legislature has manifested its determination that the misdemeanor penalties otherwise provided for contracting without a license constitute insufficient deterrent to prevent the conduct prohibited (*Frank* v. *Kozlovsky, supra,* 13 Cal.App.3d at pp. 125-126; *General Ins. Co.* v. *Superior Court, supra,* 26 Cal.App.3d at p. 184). As far as principles of equity are concerned, the cases are unanimous in holding that the courts may not resort to equitable considerations in defiance of section 7031. As the Supreme Court stated in *Lewis & Queen* v. *N. M. Ball Sons, supra,* 48 Cal.2d at page 151, "But we are not free to weigh these [equitable] considerations in the present case. Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of the state." (Accord: *Rushing* v. *Powell, supra,* 61 Cal.App.3d 597, 605; *Vitek, Inc.* v. *Alvarado Ice Palace, Inc., supra,* 34 Cal.App.3d 586, 592; *General Ins. Co.* v. *Superior Court, supra,* 26 Cal.App.3d 176, 184.)

The judgment is affirmed.

Rouse, J., and Miller, J., concurred.

A petition for a rehearing was denied May 23, 1979, and appellant's petition for a hearing by the Supreme Court was denied July 12, 1979.