NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 2 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PAUL SINGH,

       Plaintiff - Appellant,

  v.

BHUPINDER BAIDWAN, AKA Paul
Baidwan,

       Defendant - Appellee.

No. 14-16287

D.C. No. 2:14-cv-00603-LKK-
CKD

MEMORANDUM*

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior District Judge, Presiding

Submitted May 10, 2016**
San Francisco, California

Before: McKEOWN and FRIEDLAND, Circuit Judges and LEFKOW,*** Senior
District Judge.

    Plaintiff-Appellant Paul Singh appeals the district court's dismissal of his

---

    \*     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

    \*\*     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

    \*\*\*     The Honorable Joan Lefkow, Senior District Judge for the U.S. District Court for the Northern District of Illinois, sitting by designation.

Complaint against Defendant-Appellee Bhupinder Baidwan.   We affirm.

Singh alleges that he wanted to purchase a gas station, but that he "did not have permanent residence status, which at the time was a requirement for a BP franchise, and of most lenders."   Baidwan allegedly agreed to hold Singh's shares in an LLC as well as Singh's fifty percent interest in the gas station in his own name "in order to help [Singh] qualify for both the loan and franchise."   Singh claims that Baidwan promised to transfer back the shares in the LLC and half interest in the gas station upon Singh's request.

In October 2013, Singh allegedly learned that Baidwan would not return Singh's shares or fifty percent interest in the gas station.   Singh then filed a complaint against Baidwan, alleging breach of contract as well as ten other claims. Baidwan filed a motion to dismiss, which the district court ultimately granted. The district court dismissed Singh's claim for breach of contract on the basis that an illegal contract is unenforceable.   The court dismissed the remainder of Singh's claims for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Singh appealed.

The district court did not err in dismissing Singh's breach of contract claim on the basis of illegality.   Under California law, the "well-settled rule [is] that the

courts will not aid a party whose claim for relief rests on an illegal transaction."

*Wong v. Tenneco, Inc.*, 702 P.2d 570, 576 (Cal. 1985) (in bank).  "This rule is

based on the rationale that 'the public importance of discouraging such prohibited

transactions outweighs equitable considerations of possible injustice between the

parties.'"  *Asdourian v. Araj*, 696 P.2d 95, 105 (Cal. 1985) (in bank) (quoting

*Southfield v. Barrett*, 91 Cal. Rptr. 514, 516 (Cal. Ct. App. 1970)).[1]  "[T]he rule[,

however,] is not an inflexible one to be applied in its fullest rigor under any and all

circumstances."  *Id.* (quoting *Southfield*, 91 Cal. Rptr. at 516).  "In each case, the

extent of enforceability and the kind of remedy granted depend upon a variety of

factors, including the policy of the transgressed law, the kind of illegality and the

particular facts."  *Id.* (quoting *S. Tahoe Gas Co. v. Hofmann Land Improvement

Co.*, 102 Cal. Rptr. 286, 292 (Cal. Ct. App. 1972)).  In *Asdourian*, the California

Supreme Court considered three factors in concluding that equitable relief was

---

[1] The dissent cites the general rule that illegal contracts, whether *malum prohibitum* or *malum in se*, will not be enforced, but ignores the fact that courts have treated those sorts of contracts differently in equity. "[A]ll the consequences which attend a contract contrary to public morals do not attend one which is purely Malum prohibitum, and that in the latter case courts will take notice of the circumstances, and will give relief, if justice and equity require a restoration of money received by either party thereunder."  *S. Tahoe Gas Co. v. Hofman Land Improvement Co.*, 102 Cal. Rptr. 286, 291 (Cal. Ct. App. 1972) (quoting *Smith v. Bach*, 191 P. 14, 15 (Cal. 1920)).

warranted.   One of those factors—whether the contract is *malum in se* or merely *malum prohibitum*—is dispositive here.   *Malum in se* agreements are "all those of an immoral character, those which are inequities in themselves, and those opposed to sound public policy or designed to further a crime or obstruct justice."   *Vitek, Inc. v. Alvarado Ice Palace, Inc.*, 110 Cal. Rptr. 86, 91 (Cal. Ct. App. 1973); *see Asdourian*, 696 P.2d at 106 (describing *malum in se* agreements similarly). Contracts that are *malum in se* are "viewed as rendering the agreement absolutely void in the sense that no right or claim can be derived from them."   *Vitek*, 110 Cal. Rptr. at 91.   In *Asdourian*, the court, citing *Vitek* with approval, explained, "a contract made in violation of [the statute] does not involve the kind of illegality which automatically renders an agreement void.   The contracts at issue here were not *malum in se*.   They were not immoral in character, inherently inequitable or designed to further a crime or obstruct justice."   696 P.2d at 106.[2]   Instead, the court explained, "the contracts were *malum prohibitum,* and hence only *voidable*

---

[2] The distinction between *malum prohibitum* and *malum in se*, while not always a bright line, nevertheless continues to be used by California courts, contrary to the dissent's suggestion.   *See Cal. Physicians' Serv. v. Aoki Diabetes Research Inst.*, 78 Cal. Rptr. 3d 646, 654 (Cal. Ct. App. 2008) ("[A] contract for the provision of medical services by licensed professionals *is plainly not malum in se*; Blue Shield would be unjustly enriched if it were allowed to retain the benefit of services bestowed on its subscribers without compensating ADRI." (emphasis added)).

4

depending on the factual context and the public policies involved." *Id.*[3]

Even according to Singh's own allegations, the contract between Singh and Baidwan was for the express purpose of evading the franchisor's and the lender's requirements. This purpose to defraud the franchisor and lender, by misleading them as to who would actually run and own the gas station, makes the contract *malum in se*, and therefore unenforceable. *See Homami v. Iranzadi*, 260 Cal. Rptr. 6, 11 (Cal. Ct. App.), *modified* (June 27, 1989) (declining to enforce an oral contract that provided that a buyer of real property would pay interest secretly to the seller in order to allow the seller to avoid declaring interest income and thus to evade required taxes). The district court therefore did not err in dismissing Singh's breach of contract claim.

The district court also did not abuse its discretion in dismissing the remainder of Singh's claims for failure to prosecute. Singh's initial opposition to Baidwan's motion to dismiss failed to meaningfully respond to the majority of

---

[3] The cases cited by the dissent as granting relief despite the illegality of a contract involved contracts that were illegal not because they involved moral turpitude but rather solely because one of the contracting parties did not have the required licenses to be participating in the industry in question. *See Asdourian*, 696 P.2d at 96 (oral contract where statute required written contract and technical non-compliance with licensing statute); *Vitek*, 110 Cal. Rptr. at 87 (unlicensed contractor); *Southfield*, 91 Cal. Rptr. at 516 (unlicensed commission merchant).

Baidwan's arguments. Consequently, the court filed an order that explained that Singh's lack of response constituted failure to prosecute, subject to dismissal under Federal Rule of Civil Procedure 41(b). As an alternative to dismissing right away, the district court gave Singh a second chance to respond, ordering that "plaintiff SHALL FILE an opposition to defendant's dismissal motion – addressing every argument in defendant's motion."

Singh, however, still declined to respond to Baidwan's arguments, asserting, "Without a ruling from the Court on its position regarding whether the oral contract is enforceable it is difficult and appears to be a waste of time and resources to address in detail the sufficiency of all the other remaining causes of action." In light of the fact that Singh failed to comply with the order, the district court did not abuse its discretion in dismissing the remainder of Singh's claims for failure to prosecute. *See* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."). Singh has also failed to offer any relevant arguments on appeal to challenge the dismissal for failure to prosecute.

AFFIRMED.

FILED

JUN 2 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

Joan H. Lefkow, District Judge, dissenting in part and concurring in part.

Singh alleges that he and other individuals invested in an LLC for the purpose of buying Arco gas stations from BP Corporation. Before the transaction at issue, the LLC had purchased seven. Another individual, Gill, had been turned down for a loan and Singh was ineligible to be a BP franchisee because of his non-resident status. To make the transaction work, the LLC by its members transferred $70,000 from Singh's capital account to Baidwan's capital account. Baidwan applied with Gill for and personally guaranteed a loan. The LLC agreed to assign a 50% share in the gas station to Baidwan, rather than Singh, and Baidwan promised to assign that share to Singh when requested.

I agree with the majority that the transaction had an unlawful purpose, to obtain a franchise and presumably a loan by making false representations. I do not fully agree that Singh and his cohorts made the representation with intent to defraud BP. In fact, the transaction closed and BP was (as far as the complaint reveals) not harmed, nor do we know of a default on the loan or whether Singh's immigration status had changed by the time he requested performance. Nonetheless, if Baidwan made a false statement to a federally insured bank (which we also do not know) at Singh's instance, Singh was

1

implicated in criminal conduct, 18 U.S.C. § 1001(a), and the agreement between them was illegal, therefore unenforceable.

I differ from the majority only in its conclusion that the court cannot do equity in a case such as this. The majority rests on the common law distinction between *malum in se* (contrary to morals, criminal) and *malum prohibitum* (contrary to statute or regulation) to reach its decision, citing *Vitek, Inc. v. Alvarado Ice Palace, Inc.*, 110 Cal. Rptr. 86 (Cal. Ct. App. 1973), for the proposition that *malum in se* contracts are "viewed as rendering the agreement absolutely void in the sense that no right or claim can be derived from them." Fair enough. But California courts have also said the general rule applies to both *malum in se* and *malum prohibitum* contracts: "The general rule is that a void contract, a contract against public policy or against the mandate of a statute, may not be made the foundation of any action, either in law or equity." *Hooper v. Barranti*, 184 P.2d 688, 691 (Cal. Ct. App. 1947) (citing cases).

The distinction between *malum in se* and *malum prohibitum* has fallen into disfavor because it "does not add to the discussion, but may actually obscure a more pointed explanation of a court's reasoning and result." 15 Corbin on Contracts §79.5, p. 25 (2003); *see R.M. Sherman Co. v. W.R. Thomason, Inc.*, 236 Cal. Rptr. 577, 581 (Cal. Ct. App. 1987) ("The First and Second Restatements of Contracts assiduously avoid the terms, focusing instead on legislative intent and the balance of interests between statutory policy and the policy favoring enforcement of contracts. (See Rest., Contracts, § 580,

2

com. a; Rest.2d Contracts, § 178, com. b.)"). As Corbin puts it, "When courts mention the distinction, they identify a contract as contrary to a statute involving conduct *malum prohibitum* as a preliminary step to providing a judicial remedy less harsh than declaring the contract completely void." 15 Corbin on Contracts §79.5, p. 25. By the same token here, the majority, while acknowledging that there may be exceptions to the general rule,[1] by identifying the contract as *malum in se*, is expressing a conclusion that no relief should be granted rather than assessing whether the evidence points to the conclusion that no relief should be granted.

Moreover, the distinction that the majority draws is not clear from the cases they rely on. Indeed, *Asdourian* and *Southfield* teach that *malum in se* is one factor of several the court considers when deciding whether or not to craft an equitable solution. *Asdourian*, 696 P.2d at 105 ("In each case, the extent of enforceability and the kind of remedy granted depend upon a variety of factors, including the policy of the transgressed law, the *kind of illegality* and the particular facts." (emphasis added) (internal quotations

---

[1] *See, e.g.*, *Southfield*, 91 Cal. Rptr. at 516 (finding that although the contract was illegal the plaintiff should be entitled to recover the balance due on the advance payment in addition to the agreed interest); *Tri-Q, Inc. v. Sta-Hi Corp.*, 404 P.2d 486, 497 (Cal. 1965) (remanding for consideration of equitable relief where refusing to enforce severance agreement structured to obtain improper income tax advantage would result in unjust enrichment of the party at greater fault); *Asdourian v. Araj*, 696 P.2d 95, 107 (Cal. 1985) (enforcing contract even though contractor was unlicensed and otherwise non-compliant with law); *Vitek*, 110 Cal. Rptr. 86, 92 (1973) (granting relief to initially unlicensed subcontractor where the public had not been harmed and promised work had been performed).

omitted)); *Southfield*, 91 Cal. Rptr. at 516 ("Where the public cannot be protected because the transaction has already been completed, *no serious moral turpitude is involved*, defendant is the one guilty of the 'greatest moral fault,' and defendant would be unjustly enriched at the expense of plaintiff if the rule were applied, the general rule should not be applied." (emphasis added)).  Rather than treating *malum in se* as a factor to be considered, the majority's analysis begins with whether the contract was *malum in se* or *malum prohibitum* and, because it concludes the former, its analysis ends.

Given the allegations in the complaint, the district court was obliged to consider whether equity favored any relief to Singh based on the evidence in the case. For this reason, I respectfully dissent. I concur in the dismissal with prejudice of all other claims.